**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re PRINCETON OFFICE PARK, L.P., <br><br> Debtor, | Bankruptcy Action No. 08-27149 (MBK) |
| PLYMOUTH PARK TAX SERVICES LLC, <br><br> Appellant, <br><br> v. <br><br> PRINCETON OFFICE PARK, LLC, <br><br> Appellee. | **ON APPEAL FROM THE BANKRUPTCY COURT OF THE DISTRICT OF NEW JERSEY** <br><br> Civil Action No. 14-2125 (MAS) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Appellant Plymouth Park Tax Services LLC's ("Plymouth") appeal from an order entered by the Bankruptcy Court on February 20, 2014 ("February 20 Order"). That Order incorporates the terms of the Bankruptcy Court's memorandum decision on January 31, 2014 ("January 31 Opinion"). The January 31 Opinion found that Plymouth knowingly charged Debtor/Appellee Princeton Office Park, L.P. ("Debtor") improper amounts by way of Plymouth's Proofs of Claim in contravention of N.J.S.A. 54:5-63.1. The Bankruptcy Court ordered that the tax sale certificate held by Plymouth was subject to forfeiture, and its lien on Debtor's property was void pursuant to 11 U.S.C. § 506(d). After careful consideration, and for the reasons set forth below, the Court affirms the Bankruptcy Court's February 20 Order.

I.  **Jurisdiction and Standard of Review**

United States District Courts have jurisdiction to review appeals "from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under [§] 157 of this title." 28 U.S.C. § 158(a)(l)-(3). The District Court sits "as an appellate tribunal, appl[ying] a clearly erroneous standard to review the bankruptcy court's factual findings and a *de novo* standard to review its conclusions of law." *In re Blatstein*, 260 B.R. 698, 705 (E.D. Pa. 2001) (citing *In re Siciliano*, 13 F.3d 748, 750 (3d Cir. 1994)). The Court is required to "break down mixed questions of law and fact, applying the appropriate standard to each component." *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992) (citation omitted).

A factual finding "is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). If it is alleged that the bankruptcy court abused its discretionary authority, "the district court may only determine whether . . . the [lower] court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *Blatstein*, 260 B.R. at 705 (alteration in original) (citing *In re Top Grade Sausage*, 227 F.3d 123, 125 (3d Cir. 2000); quoting *Int'l Union, UAW v. Mack Trucks, Inc.*, 820 F.2d 91, 95 (3d Cir. 1987)).

II. **Background**[1]

Debtor is a New Jersey limited partnership whose primary asset is a vacant industrial building complex in Lawrence Township, New Jersey ("Property"). *In re Princeton Office Park,*

---

[1] Plymouth does not appeal the factual findings the Bankruptcy Court made in its January 31 Opinion. As such, the Bankruptcy Court's Findings of Fact in its January 31 Opinion are incorporated by reference herein, and only those facts relevant to this appeal are summarized below.

2

*L.P.*, 504 B.R. 382, 386 (Bankr. D.N.J. 2014). Plymouth is a company that was formed for the purpose of investing in tax sale certificates in New Jersey, as well as other states. *Id.*

The New Jersey Legislature has adopted a comprehensive statutory scheme governing the existence and sale of tax liens for unpaid property taxes, N.J.S.A. 54:5-1 to -137 (the "Tax Sale Law"). *In re Princeton Office Park, L.P.*, 504 B.R. at 391. When a property owner in New Jersey fails to pay property taxes, the municipality in which the property is located auctions the lien through a bidding process authorized by the Tax Sale Law. *See* N.J.S.A. 54:5-19, -31, -32. Municipalities in New Jersey typically hold these auctions once a year, and the auctions are open to the public. In a process designed to be competitive, the auction for each tax lien opens with an 18% interest rate, which represents the interest that the property owner must pay on the tax debt. *See id.* Any subsequent bid is at a lower interest rate, and if bidding reaches 0%, bidders can bid an additional premium in order to win the auction and obtain title to the lien. *See id.* The successful purchaser receives a tax sale certificate as evidence of the lien. The successful purchaser can also opt to pay subsequent unpaid taxes on the property, and these amounts are tacked onto the total lien. The purchaser of the tax sale certificate can foreclose on the property after a statutory number of years. *See* N.J.S.A. 54:5-86. Under the Tax Sale Law, the municipality is obligated to return the premium paid by the purchaser if the tax sale certificate is redeemed within five years. *See* N.J.S.A. 54:5-33. After the end of the five-year period, if the certificate has not been redeemed, the premium becomes the property of the municipality. *See id.* If the purchaser, however, knowingly charges excess fees in connection with redeeming the certificate, the purchaser forfeits the certificate. *See* N.J.S.A. 54:5-63.1.

On December 19, 2005, Plymouth bid a 0% interest rate and an additional premium of $600,100, at a Lawrence Township sale of municipal tax liens to acquire a tax sale certificate

("Certificate") to the Property. *In re Princeton Office Park, L.P.*, 504 B.R. at 386. On December 18, 2007, Plymouth filed a foreclosure complaint against Debtor for the Property, and the Superior Court of New Jersey ordered that a final judgment could be requested on September 10, 2008. *Id.* On September 9, 2008, one day before the deadline, Debtor filed for relief under Chapter 11 of the United States Bankruptcy Code. *Id.*

On October 29, 2008, Plymouth filed a proof of claim ("First POC") in the amount of $1,775,791.33, which included the $600,100 premium paid to acquire the Certificate. *Id.* Thereafter, Plymouth moved before the Bankruptcy Court for a stay, seeking permission to complete the tax foreclosure on the Property before the five-year redemption period of the certificate expired. *Id.* at 387. On July 15, 2009, the Bankruptcy Court denied Plymouth's motion but tolled the five-year period during the duration of the bankruptcy proceedings ("July 15 Order"). *Id.* The July 15 Order further required Plymouth to amend its First POC to remove the premium amount. *Id.* On January 28, 2010, Plymouth filed an amended proof of claim ("Amended POC") in the amount of $1,155,487.81, removing the $600,100 premium and other costs and fees. *Id.* at 387-88.

During the course of the bankruptcy proceedings, Debtor maintained its affirmative defense to the allowance of Plymouth's Proofs of Claim under N.J.S.A. 54:5-63.1 based on Plymouth's inclusion of the premium amount in its First POC. *Id.* at 388. When it first considered the issue, the Bankruptcy Court held that the record before it did not support the conclusion that Plymouth "knowingly" charged or exacted a fee or charge from Debtor in excess of the amounts permitted under New Jersey law. *Id.* at 388-89. On September 20, 2010, Debtor moved for reconsideration of the issue, and the Bankruptcy Court set the matter down for trial. *Id.* at 389.

4

The Bankruptcy Court conducted the multi-day trial over the course of two months and heard from eight witnesses. *Id.* at 385. After considering the evidence produced at trial and reviewing the parties' post-trial submissions, the Bankruptcy Court ruled that Plymouth did knowingly charge Debtor improper amounts by way of its First POC in contravention of N.J.S.A. 54:5-63.1. *Id.* As a result, the Bankruptcy Court ordered that the tax sale certificate held by Plymouth was subject to forfeiture, and its lien on Debtor's property was void pursuant to 11 U.S.C. § 506(d). *Id.*

### III. Analysis

The issues presented on appeal are rather straightforward. Plymouth contends that Debtor's initiation of the bankruptcy proceedings preempt the application of N.J.S.A. 54:5-63.1. (ECF No. 3.) Plymouth additionally contends that even if N.J.S.A. 54:5-63.1 is not preempted, the filing of a proof of claim does not constitute an attempt to collect a debt under the New Jersey statute.[2] (ECF No. 3.) As explained more fully below, the Court finds that the bankruptcy proceedings do not preempt the application of N.J.S.A. 54:5-63.1 to a debtor's objection to a claim, and Plymouth's filing the First POC does constitute an attempt to "charge or exact" an impermissible amount "in connection with the redemption" under N.J.S.A. 54:5-63.1.

---

[2] Plymouth, additionally, presents the issue of whether, in finding that the "redemption" predicate was met under N.J.S.A. 54:5-63.1, the Bankruptcy Court improperly *sua sponte* applied N.J.S.A. 54:5-54.1, which "carved an exemption from the tax collector mediated redemption process for payments made directly 'pursuant to federal bankruptcy law.'" (ECF No. 3.) N.J.S.A. 54:5-54.1 became effective on January 18, 2010, and the First POC was filed on October 29, 2008. Plymouth argues that the statute "should not be applied retroactively to the filing" of Plymouth's First POC, as it was filed "long before the enactment and effective date" of the statute. (*Id.*) The Court will not address this alternative argument as the Court finds that even prior to the enactment of N.J.S.A. 54:5-54.1, the facts of this case countenance an action "in connection with redemption" under N.J.S.A. 54:5-63.1

5

A.  **The Bankruptcy Proceedings Do Not Preempt the Application of N.J.S.A. 54:5-63.1**

In its appeal, Plymouth argues "that the Debtor's initiation of the bankruptcy proceedings ushered in the Bankruptcy Code and rules promulgated thereunder which specify comprehensive and detailed procedures for the filing and consideration of creditors' claims and resolution of disputes over claims." (Appellant's Br. 3, ECF No. 18.) As such, Plymouth asserts that "[c]laims consideration and allowance are core functions of the bankruptcy system and preempt the application of N.J.S.A. 54:5-63.1 and its alternative and conflicting remedy prescription." (*Id.*) In support, Plymouth cites *Simon v. FIA Card Services, N.A.*, 732 F.3d 259 (3d Cir. 2013), *In re Guenot*, No. 11-37501, 2014 WL 67320 (Bankr. D.N.J. Jan. 2, 2014), and *Rhodes v. Diamond*, 433 F. App'x 78 (3d Cir. 2011), for the proposition that consumer protection statutes are preempted by the Bankruptcy Code in the context of claim objection.

In *Simon*, the debtor sought to bring various claims for violations of the Fair Debt Collection Practices Act ("FDCPA"), including the failure to include the "mini-*Miranda*" warning required under 15 U.S.C. § 1692e. *See* 732 F.3d at 263-64. Section 1692e mandates that a debt collector must disclose in the initial communication with the debtor "that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose." 15 U.S.C. § 1692e(11). The district court dismissed the action in its entirety, holding that the FDCPA claims were precluded by the Bankruptcy Code. *See Simon v. FIA Card Servs., N.A.*, No. 12-0518, 2012 WL 2891080, at *3 (D.N.J. July 16, 2012). The Third Circuit reversed in part, finding that there should not be a blanket preclusion of all FDCPA claims. Rather, the Third Circuit held:

> When, as here, FDCPA claims arise from communications a debt collector sends a bankruptcy debtor in a pending bankruptcy proceeding, and the communications are alleged to violate the Bankruptcy Code or Rules, there is no categorical preclusion of the FDCPA claims. When, as is also the case here, the FDCPA claim arises from communications sent in a pending bankruptcy proceeding and there is

6

no allegation that the communications violate the Code or Rules, there is even less reason for categorical preclusion. **The proper inquiry for both circumstances is whether the FDCPA claim raises a direct conflict between the Code or Rules and the FDCPA, or whether both can be enforced.**

*Simon*, 732 F.3d at 274 (emphasis added). Therefore, the Third Circuit found that preclusion of FDCPA claims was necessary where there was a direct conflict with the Bankruptcy Code. Consequently, the Third Circuit found that the plaintiffs' FDCPA claim premised on a violation of § 1692e(11) must be dismissed, emphasizing that there was an actual conflict involved if both statutes were enforced: "If . . . a § 1692e(11) claim could arise from the fact that the [firm's] letters and subpoenas did not include the 'mini-*Miranda*' notice, the firm would violate the automatic stay provision of the Bankruptcy Code by including the notice or violate the FDCPA by not including the notice." *Id.* at 280.

Plymouth agrees that the Third Circuit's decision in *Simon* requires an inquiry on a case-by-case basis, but asserts that *Simon* "did not address allegations that amounts stated in a proof of claim were incorrect," leaving the issue in this case open. (Appellant's Br. 13 (internal quotation marks omitted).) Plymouth instead asserts that the Bankruptcy Court's interpretation of *Simon* in *Guenot* concluded that "the Bankruptcy Code preempted an FDCPA remedy in the instance of an objection to the filing of a proof of claim." (Appellant's Br. 14.) Based on this interpretation of *Simon* in *Guenot*, Plymouth argues that the "reach-down to a State statute in the claims' objection process," as the Bankruptcy Court did in this case, is exactly the type of remedy preempted by the Bankruptcy Code. (*Id.*)

In *Guenot*, the debtor objected to a proof of claim by filing a complaint asserting violation of the FDCPA, among other claims. 2014 WL 67320, at *1. The Bankruptcy Court, in noting that the *Simon* case did not involve the filing of a proof of claim, held that "based on § 501 and Rule 3001, the court finds that allowing debtors to object to a claim by filing a complaint based on

consumer protection laws instead of using the claims process in the bankruptcy court creates a direct and irreconcilable conflict." *Id.* at *2. The Bankruptcy Court reasoned that failing to recognize preemption in this context invited confusion. *Id.*

Lastly, Plymouth cites *Rhodes*, a pre-*Simon* decision, to support its argument that "in the exclusive context of a bankruptcy claim objection, FDCPA based objections are preempted." (Appellant's Br. 15.) In *Rhodes*, the debtors filed a complaint against the creditor for illegally increasing debts through filing inflated proofs of claims in the bankruptcy proceeding and violating the FDCPA. 433 F. App'x at 79. The Third Circuit, in agreeing with the district court's decision, held that debtor's claims arising from creditor's conduct in the bankruptcy proceeding "cannot give rise to FDCPA or state law causes of action." *Id.* at 80.

The above cases relied upon by Plymouth, however, are inapplicable in this context as the Debtor did not file a separate complaint but asserted an objection based on state law pursuant to the Bankruptcy Code. Therefore, this Court must review, *de novo*, whether the claims allowance scheme within the Bankruptcy Code preempts New Jersey's Tax Sale Law's forfeiture remedy. Specifically, under the Tax Sale Law:

> Any holder of a tax sale certificate, excepting any municipal corporation, his agent, servant, employee or representative, who knowingly charges or exacts any fee or charge in connection with the redemption of any tax sale certificate owned by him, in excess of the amounts permitted by chapter five of Title 54 of the Revised Statutes, shall forfeit such tax sale certificate to the person who was charged such excessive or unlawful fee and the person paying such unlawful charge shall become vested with all the right, title and interest of such tax sale certificate holder in and to such tax lien. In addition thereto the person aggrieved shall have a right of action to recover back the full amount paid by him to such tax lien holder, by an action at law in any court of competent jurisdiction.

N.J.S.A. 54:5-63.1.

Section 501 of the Bankruptcy Code provides the right of a creditor to file a claim against a debtor. 11 U.S.C. § 501. Rule 3001(f) of the Federal Rules of Bankruptcy Procedure provides

8

that "[a] proof of claim executed and filed in accordance with these rules shall constitute *prima facie* evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). A proof of claim is deemed allowed under § 502(a), unless a party in interest objects. 11 U.S.C. § 502(a). Even where a party objects, however, the court "shall allow" the claim unless one of the nine exceptions enumerated in § 502(b) applies. 11 U.S.C. § 502(b). The first exception states that a claim shall not be allowed "to the extent that . . . such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1).

In the present case, there is no direct conflict between the Bankruptcy Code's claims objection procedure and the Tax Sale Law's forfeiture remedy. In contrast, *Simon*, *Guenot*, and *Rhodes* were concerned with the conflict that would be created if a creditor had to comply with both the Bankruptcy Code and the substantive law claim the debtor was asserting. Additionally, Debtor followed the proper procedure set forth by the Bankruptcy Code to object to Plymouth's claim based on an applicable state law, unlike the procedure followed by debtors in *Guenot* and *Rhodes*. The Code has established how a party can object to a claim and what objections can be made. *See* 11 U.S.C. § 502. Section 502 is not boundless, but provides a debtor a defense to a claim to the extent the defense is available under applicable law, including state law, absent the bankruptcy. *See* 11 U.S.C. § 502(b)(1); *see also Matter of Nuisance Corp.*, 17 B.R. 80, 82 (Bankr. D.N.J. 1981); *Matter of Toledo*, 17 B.R. 914, 917 (D.P.R. 1982) ("If the claim can be disallowed under local law by a defense that the debtor may have in a non-bankruptcy proceeding (i.e. usury) then the bankruptcy court may deny the allowance of the claim based on that defense."). In other words, substantive state law is applied to determine the validity of a creditor's claim.

Here, complying with both the Bankruptcy Code and the Tax Sale Law is not impossible, and actually quite simple. The Bankruptcy Code allows a creditor to file a claim against a debtor, and then allows a debtor to object where such claim is unenforceable against the debtor under any applicable state law. Here, Plymouth chose to file the First POC with the premium amount included. Nothing in the Bankruptcy Code or the Tax Sale Law required Plymouth to include this amount in its First POC, and the Bankruptcy Court even later instructed Plymouth to remove the amount from its claim. Thus, the Bankruptcy Court properly looked to the Tax Sale Law in support of Debtor's objection to Plymouth's claim. As the Bankruptcy Code and Tax Sale Law are not in direct conflict, N.J.S.A. 54:5-63.1 is not preempted by the Bankruptcy Code.

**B. Plymouth Did Knowingly Charge or Exact Excess Fees in Connection with a Redemption**

In its appeal, Plymouth argues, even if N.J.S.A. 54:5-63.1 is not preempted by the Bankruptcy Code, the filing of its First POC is "not an effort to collect a debt" and does not "constitute[] a demand made 'in connection with the redemption of any tax sale certificate.'" (Appellant's Br. at 24, 26.)[3]

---

[3] Bankruptcy Rule 8006 requires a party appealing to the district court to file a "statement of issues to be presented" on appeal within ten days of the bankruptcy court order. Fed. R. Bankr. P. 8006. Plymouth timely filed such a statement, and its second issue states that the Bankruptcy Court erred as a matter of law by "holding that the filing of a proof of claim alone by Plymouth Park represents an attempt to collect a debt." (ECF No. 3.) Rule 8014 requires that all appellate briefs filed in the district court contain a statement of the issues presented. Fed. R. Bankr. P. 8014(a)(5). Plymouth did not include the above issue in its brief, but instead argues that the Bankruptcy Court erred "as no 'redemption' of a tax sale certificate was ever initiated by the Debtor." (Appellant's Br. 1.) Within Plymouth's brief, however, it argues both, under separate point headings, that "the filing of a proof of claim in bankruptcy does not constitute an attempt to 'charge or exact' an impermissible amount" and "the debtor has made no attempt at redemption." (Appellant's Br. at VI, VII.) A district court may, in its discretion, deem an argument waived if it is not presented in accordance with Rule 8014. *See In re Trans World Airlines, Inc.*, 145 F.3d 124, 132 (3d Cir. 1998). However, as Debtor addressed both arguments in its opposition and there is no prejudice to Debtor, the Court will review both issues on this appeal.

        1.        <u>Filing the First POC does constitute an attempt to "charge or exact" fees under N.J.S.A. 54:5-63.1.</u>

Plymouth, analogizing N.J.S.A. 54:5-63.1 to the FDCPA, argues that the filing of a proof of claim is not the same thing as attempting to collect a debt. Plymouth asserts that "[t]he analogy is as follows: if filing a proof of claim in bankruptcy is not an effort to collect a debt under the FDCPA, then filing a proof of claim likewise can not be an attempt to 'charge or exact' an impermissible fee under N.J.S.A. 54:5-63.1." (Appellant's Br. 26.)

Plymouth's analogy fails on two grounds. First, the Tax Sale Law does not require the "collection of a debt" as an element, but only the "exact[ing] or charg[ing]" of excess fees. *See* N.J.S.A. 54:5-63.1. The plain language of N.J.S.A. 54:5-63.1, "exact or charge," is not referring to collection but to the amount that a tax sale certificate holder requires in order to release the lien on a debtor's property. Pursuant to Rule 3001, a proof of claim is a written statement, sworn to by the creditor, setting forth the amount of the claim sought by the creditor. Fed. R. Bankr. P. 3001. Plymouth charged the premium amount of $610,000 against Debtor in its First POC, and thus, this element under N.J.S.A. 54:5-63.1 has been met.

Second, "[t]he primary goal of the FDCPA is to protect consumers from abusive, deceptive, and unfair debt collection practices, including threats of violence, use of obscene language, certain contacts with acquaintances of the consumer, late night phone calls, and simulated legal process." *F.T.C. v. Check Investors, Inc.*, 502 F.3d 159, 165 (3d Cir. 2007) (citation omitted). In contrast, the primary goal of the Tax Sale Law is "to enable governments to realize taxes by returning property to the paying tax rolls without first expending money to foreclose or bar the equity of redemption." *Varsolona v. Breen Capital Servs. Corp.*, 180 N.J. 605, 621 (2004) (citation omitted). "One of the [Tax Sale Law's] secondary purposes is to protect the delinquent taxpayer from unfair treatment by the TSC holder." *Id.* at 622. Appellee correctly asserts that "[t]he debtor

11

does not need the FDCPA protections from debt collectors as the Bankruptcy Code affords the debtor its own protections such as the automatic stay, which prevents all debt collection efforts, not only those proscribed under the FDCPA." (Appellee's Opp'n Br. 32, ECF No. 19.) The goals of the Tax Sale Law, and the protection afforded to delinquent taxpayers, are not similarly afforded to a debtor under the Bankruptcy Code in the context of charging excess fees.

        2.       <u>Filing the First POC does constitute a demand made "in connection with the redemption" under N.J.S.A. 54:5-63.1.</u>

Plymouth argues, as it did before the Bankruptcy Court, that, because redemption is a regulated process under the Tax Sale Law, the only way the Debtor could redeem the Certificate was by adhering to that process. As such, Plymouth asserts that since the Debtor did not seek redemption through this regulated process, Plymouth did not violate N.J.S.A. 54:5-63.1. Debtor counters Plymouth's argument, stating that "[t]he term 'redemption' is not defined in the Tax Sale[s] Law," but in general is "the act or an instance of reclaiming or regaining possession of property by paying a specific price." (Appellee's Opp'n Br. 38 (citing Black's Law Dictionary (9th ed. 2009).)

The Court is persuaded that, despite the Tax Sale Law's silence, it comports with the legislative intent to find a "redemption," is effectuated, for purposes of N.J.S.A. 54:5-63.1, where a debtor seeks relief in bankruptcy under Chapter 11 from an action by a lienholder. Indeed, the Court notes that, throughout its various sections, the Tax Sale Law mentions redemption in relation to paying fees required to the collector, N.J.S.A. 54:5-54; through paying installment payments, N.J.S.A. 54:5-65; and redeeming through a foreclosure action, N.J.S.A. 54:5-86. Additionally, while this issue has never been addressed directly by New Jersey courts, the New Jersey Appellate Division stated that the Tax Sale Law "does not outlaw . . . private redemption arrangements." *Jackson v. HSBC Bank USA*, 393 N.J. Super. 1, 5-6 (App. Div. 2007). Furthermore, the New

Jersey Legislature has since enacted a new section, which provides that "[a]ll redemptions shall be made through the tax collector's office, unless authorized by court order or pursuant to federal bankruptcy law." N.J.S.A. 54:5-54.1. This legislation now clarifies how a redemption can be made. While Plymouth would like this Court to read into the Tax Sale Law, prior to the enactment of this new section, that redemptions could only be made through the tax collector's office, no such language was present in the law, and the statute and case law suggest otherwise.

It is undisputed that in 2007 Plymouth filed a foreclosure complaint against Debtor on the Property arising from the Certificate, and in response, Debtor filed for relief under Chapter 11 of the Bankruptcy Code. *In re Princeton Office Park, L.P.*, 504 B.R. at 386. Thereafter, Plymouth filed the First POC in the amount of $1,775,791.33, which included the $600,100 premium. *Id.* Here, the Court is satisfied that Plymouth's filing of the First POC was undertaken *in connection with redemption*, as the Debtor was attempting to redeem the Certificate under a Chapter 11 bankruptcy proceeding.

## IV. <u>Conclusion</u>

For the reasons set forth above, and for other good cause shown, it is hereby ordered that the Bankruptcy Court's February 20 Order is affirmed. An Order consistent with this Opinion will be entered.

s/ Michael A. Shipp<br>
**Michael A. Shipp**<br>
**United States District Judge**

**Dated:** January 30, 2015